IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL CAUSE NO. 1:19-CR-43-SA

LEIGH ANN SMART  DEFENDANT

ORDER

On March 27, 2019, Leigh Ann Smart was charged in a three-count Indictment, alleging that she improperly obtained Social Security disability payments through fraudulent means. *See* [1]. On July 24, 2019, Smart pled guilty to Count One of the Indictment, which specifically alleged as follows:

> From on or about December, 2015 to on or about April, 2018, in the Northern District of Mississippi, LEIGH ANN SMART, defendant, having knowledge of the occurrence of one or more events affecting her continued right to receive Disability Insurance benefits under Title II of the Social Security Act, did willfully and knowingly conceal and fail to disclose such events, with a fraudulent intent to secure such benefit either in a greater amount than was due or when no payment was authorized, those events being, her work activity with and earnings from Le-Vel Premium Lifestyle Company during the subject time period, in violation of 42 U.S.C. § 408(a)(4).

*See* [1]. Smart's sentencing hearing was continued on multiple occasions but was ultimately held on October 27, 2020.

Prior to the sentencing hearing, a Presentence Investigation Report [40] was prepared and disclosed to Smart. On March 6, 2020, Smart filed an Objection [29] to the Presentence Investigation Report. Smart's Objection [29] pertains solely to the amount of restitution for which she is responsible. Specifically, Smart objects to Paragraphs 55, 57, and 111 of the Presentence Investigation Report, asserting that she "did not earn sufficient income in 2016 or 2018 to cause her disability benefits to be affected, and restitution is not owed for those years. Her income from 2017 exceeded the limit, and restitution is owed for that calendar year." [29].

Smart's sentencing hearing was held on October 27, 2020. At that time, the Court heard testimony on the Objection from Jeremy Piburn, an agent of the Social Security Administration ("SSA"). At the conclusion of the hearing, the Court sentenced Smart to a term of probation and took the Objection [29] as to the appropriate amount of restitution under advisement. The Court now enters this Order on the amount of restitution owed.

The Court first notes its statutory authority to order restitution in cases of fraud in connection with Social Security benefits. *See* 42 U.S.C. § 1383a. In pertinent part, the applicable statute provides:

> (1) Any Federal court, when sentencing a defendant convicted of an offense under subsection (a), may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to the Commissioner of Social Security, in any case in which such offense results in--
>
> > (A) the Commissioner of Social Security making a benefit payment that should not have been made[.]

42 U.S.C. § 1383a(b)(1)(A).

As noted above, Smart's Objection [29] pertains solely to the amount she owes in restitution. She notes that the regulations of the SSA permit persons with disabilities to engage in "substantial gainful activity." As to "substantial gainful activity," there is no dispute that a person receiving benefits may work and earn wages, so long as the amount of income the person earns in a particular year does not exceed the threshold amount set forth by the SSA. Smart provided the Court with copies of her tax returns and notes in her Objection [29] that "[i]n 2016, [her] net income was $6,240 as reported in her tax return. This is lower than the $13,560 SGA amount. In 2018, [her] net income was $-4,278 as reported in her tax return. This is lower than the $14,160 SGA amount." Thus, Smart contends that, since her net income in the years 2016 and 2018 was below the "substantial gainful activity" amount set by the SSA, she should not be

responsible for restitution for those years. She admits, however, that her 2017 tax return indicates an amount of income greater than the "substantial gainful activity" amount and that she therefore owes restitution for that year.

The Government opposes the Objection [29] on two main grounds. First, the Government elicited testimony from Agent Piburn as to Smart's 2016 and 2018 tax returns. Agent Piburn provided a detailed explanation as to why he believed that Smart's 2016 and 2018 tax returns were inaccurate, particularly contending that she claimed excessive expenses which reduced her net income for those years. Consistent with Agent Piburn's testimony, the Government contends that Smart cannot utilize her tax returns to support her argument because the returns are inaccurate. Second, the Government relies upon 42 U.S.C. § 422(5), which provides as follows:

> Upon conviction by a Federal court, or the imposition of a civil monetary penalty under section 1320a-8 of this title, that an individual has fraudulently concealed work activity during a period of trial work from the Commissioner of Social Security by--
>
> > (A) providing false information to the Commissioner of Social Security as to whether the individual had earnings in or for a particular period, or as to the amount thereof;
> > (B) receiving disability insurance benefits under this subchapter while engaging in work activity under another identity, including under another social security account number or a number purporting to be a social security account number; or
> > (C) taking other actions to conceal work activity with an intent fraudulently to secure payment in a greater amount than is due or when no payment is authorized,
>
> no benefit shall be payable to such individual under this subchapter with respect to a period of disability for any month before such conviction during which the individual rendered services during the period of trial work with respect to which the fraudulently concealed work activity occurred, and amounts otherwise due under this subchapter as restitution, penalties, assessments, fines, or other repayments shall in all cases be in addition to any amounts for which such individual is liable as overpayments by reason of such concealment.

3

42 U.S.C. § 422(5). Citing this statute, the Government contends that, because Smart took actions to conceal her work activity from SSA, she was not entitled to any benefits whatsoever and that she therefore owes restitution for all benefits received during that time period.

The Court will address the Government's arguments in turn, beginning with its argument that Smart should not be permitted to utilize her tax returns to support her argument because they are inaccurate. On this issue, the Court notes the following pertinent testimony which was elicited from Agent Piburn during cross-examination:

> Q. You have not been qualified as an expert witness in this case?
> A. No, sir, I am not.
> Q. Do you know what information was provided to the accountant in order for him to prepare those returns?
> A. No, that's what I was alluding to. I would need to see the rest of it to determine whether or not those were actual valid expenses.
> Q. That's right. So as we sit here today, even though you have questions, you don't know that there is anything fraudulent about any of those tax returns?
> A. Well, they do defy common sense.
> Q. *Okay. But my point is, is that the accountant is the one who prepared the tax returns and he believed that those deductions or expenses were acceptable and the returns were amended and filed, correct?*
> A. *I believe so, yes, sir.*

(emphasis added).

The Court finds this testimony telling. While Agent Piburn undoubtedly testified as to perceived discrepancies or issues with the expenses which were listed on Smart's 2016 and 2018 tax returns, in the above-quoted testimony, he admitted that he did not have personal knowledge as to the accountant's calculations concerning the appropriate amount of expenses to claim. In other words, while Agent Piburn questioned the information contained in the tax returns, he does not have actual personal knowledge that the expenses listed therein are fraudulent. While

acknowledging Agent Piburn's assertions, the Court rejects the Government's argument on this point.

The Government next, relying on 42 U.S.C. § 422(5), contends that Smart was not entitled to any benefits at all because she took actions to conceal her work activity from SSA. Arguing in opposition, Smart emphasizes the language of 42 U.S.C. § 422(5)(c), which provides that no benefits shall be payable for a period of trial work "[u]pon conviction by a federal court, . . . that an individual has fraudulently concealed work activity . . . by . . .taking other actions to conceal work activity with an intent fraudulently to secure payment in a greater amount than is due or when no payment is authorized." 42 U.S.C. § 422(5)(c). Smart avers that the Government has no proof that Smart intended to obtain payment "in a greater amount than is due" because she was entitled to the specific amount of benefits which she received during this time period so long as her "substantial gainful activity" fell below the applicable amount. The Government contends that she was not entitled to any amount of benefits after failing to be candid with the SSA regarding her work activity. Thus, in the Government's view, 42 U.S.C. § 422(5) makes clear that Smart was not entitled to any benefits during the applicable time period and she therefore should be fully responsible for the corresponding restitution.

The Court notes the lack of case law interpreting 42 U.S.C. § 422(5). However, in looking to 42 U.S.C. § 422(5), the Court initially notes that either subsection (A), (B), *or* (C) is sufficient to satisfy the statute. *See generally* 42 U.S.C. § 422(5). While the hearing involved much discussion regarding subsection (C), the Court finds subsection (A) informative. Under that subsection, an individual is not entitled to benefits "[u]pon conviction by a Federal court . . ., that an individual has fraudulently concealed work activity during a period of trial work from the Commissioner of Social Security by . . . providing false information to the Commissioner of

5

Social Security as to whether the individual had earnings in or for a particular period, or as to the amount thereof[.]" 42 U.S.C. § 422(5)(A).

Here, Smart pled guilty to "having knowledge of the occurrence of one or more events affecting her continued right to receive Disability Insurance benefits under Title II of the Social Security Act" and "willfully and knowingly conceal[ing] and fail[ing] to disclose such events, with a fraudulent intent to secure such benefit either in a greater amount than was due or when no payment was authorized[.]" *See* [1], [19]. Furthermore, the Factual Basis, which was read into the record at the plea hearing and to which Smart raised no objection, sets forth the specific acts which she took to conceal her work activity. Considering Smart's entry of a guilty plea as well as her agreement with the Factual Basis prepared in this case, Smart has admitted under oath that she had a fraudulent intent to conceal or fail to disclose her work activity to the SSA.

In the Court's view, Smart's admissions that she took fraudulent steps to conceal her work activity undercut her argument as to the Objection [29]. Presumably, had Smart advised the SSA of her work activity, further action could have been taken to determine the extent of benefits, if any, to which she was entitled. In other words, Smart's actions placed the SSA at a disadvantage and prevented them from being able to fully analyze her purported entitlement to benefits. Viewing this matter equitably, the Court finds that, because Smart took actions to prevent the SSA from becoming aware of her work activity in an effort to obtain benefits to which she was not entitled, she should be required to pay restitution for the benefits she received during 2016 and 2018.

Although the Court rejects the underlying arguments set forth in the Defendant's Objection [29], it does agree that the restitution amount should not extend beyond the time period of April 2018. The Indictment [1] does not allege wrongful activity past that date and the

Court therefore finds that a restitution order beyond that time is not appropriate. The parties agree that the applicable restitution amount through April 2018 is $29,208.00. That amount is hereby ordered in restitution.

The Objection [29] is OVERRULED. A Judgment consistent with this Order will be entered in due course.

SO ORDERED, this the 13th day of November, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE